# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ROGER CHARLES DAY, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 19-3422 (EGS) |
| | ) | |
| U.S. DEPARTMENT OF DEFENSE, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Roger Charles Day, Jr. ("plaintiff" or "Day") brings this action under the Freedom of Information Act ("FOIA"), *see* 5 U.S.C. § 552, against the United States Department of Defense ("defendant" or "DoD"). This matter is before the Court on Defendant's Second Renewed Motion for Summary Judgment (ECF No. 57). For the reasons discussed below, the Court GRANTS summary judgment for defendant.

## I. BACKGROUND

DoD's Office of Inspector General ("DoD OIG"), its declarant explains, "initiate[s], conduct[s], and supervise[s] audits, investigations, and evaluations relating to programs and operation of the DoD." First Dorgan Decl. (ECF No. 27-3) ¶ 4. "The Office of the Deputy Inspector General for Investigations . . . leads the Defense Criminal Investigative Service ('DCIS'), the criminal investigative arm of the DoD OIG." *Id*. ¶ 6.a.; *see* First SMF (ECF No. 27-2) ¶ 5. Plaintiff requests "all records concerning [himself] specifically but not limited to records in the custody or control of [DCIS]." First SMF ¶ 7; Second SMF (ECF No. 48-2) ¶ 8; *see* Compl. (ECF No. 1), Ex. A at 1 (ECF No. 1-1 at 3). All the records responsive to plaintiff's FOIA request, assigned tracking number DODOIG-2019-001152, First SMF ¶ 8; Second SMF ¶

9, were DCIS records, *see* First Dorgan Decl. ¶ 15; Second SMF ¶ 14.  In the course of processing the request, DoD referred records to, or consulted with, the Executive Office for United States Attorneys ("EOUSA"), the United States Marshals Service ("USMS") and INTERPOL Washington, U.S. National Central Bureau ("INTERPOL Washington"), among other agencies.  *See* Second SMF ¶ 34.

The Court already has determined that DoD's search for responsive records was reasonable.  *See* Memorandum Opinion and Order, *Day v. Dep't of Defense*, No. 19-cv-3422 (D.D.C. Apr. 23, 2021) (ECF No. 32).  In addition, the Court has found that: (1) all the responsive records were compiled for law enforcement purposes within the scope of Exemption 7; and (2) information properly has been withheld under Exemptions 3, 4, 5, 6, 7(C), 7(D), and 7(E).[1]  Memorandum Opinion and Order, *Day v. Dep't of Defense*, No. 1:19-cv-3422 (D.D.C. Jan. 12, 2024) (ECF No. 55).

Remaining for the Court's resolution are two matters: (1) withholdings by EOUSA, USMS and INTERPOL Washington under Exemption 7(E); and (2) segregability.

---

[1]    Two agencies, DoD and the Federal Bureau of Investigation ("FBI"), invoked Exemption 7(D), and the Court's prior ruling granted summary judgment only with respect to the FBI records.  DoD no longer relies on Exemption 7(D), Third SMF (ECF No. 57-2) ¶ 1, and since has "reprocessed and disclosed to [p]laintiff" the relevant pages of records "in a supplemental response . . . on April 23, 2024."  Third Dorgan Decl. (ECF No. 57-3) ¶ 5; *see id*. ¶ 4 (referring to Vaughn Index (ECF No. 48-6) (Bates 001588-001590, 001592-001595, 002232-002233 and 002888)); Third SMF ¶ 2.

Five agencies invoked Exemption 7(E), and the Court's prior ruling granted summary judgment only with respect to DoD and FBI.

**A. Executive Office for United States Attorneys**

DoD referred 863 pages of records to EOUSA, received by EOUSA on September 30, 2020, and assigned tracking number EOUSA-2020-004649.  *See* First Smith Decl. (ECF No. 48-18) ¶¶ 4-5.  According to EOUSA's declarant:

> The referred documents relate primarily to *United States of America v. Roger Charles Day, Jr.*, 3:96-cr-452 (D.N.J.), a 1996 defense contracting fraud, mail fraud, and bribery prosecution against . . . Day, and to a scheme by . . . Day to retaliate against federal and state judges, prosecutors, law enforcement officers, other public officials, witnesses, and other individuals who were involved in that investigation and prosecution.  The scheme involved creating and filing, in the appropriate county office, fraudulent Uniform Commercial Code Financing Statements (UCC-1s) creating an appearance that each of those individuals was indebted to Day or his coconspirator for sums ranging from hundreds of thousands to billions of dollars.  Day and his coconspirator then issued fraudulent notices of default to the victims and filed fraudulent judgments against the victims, thereby creating purported judgment liens that wreaked havoc in their personal financial lives.  At least two New Jersey United States District Judges, at least two federal prosecutors, at least one state prosecutor, numerous witnesses, and even one witness in Italy who was involved in Day's extradition from that country to face the earlier fraud charges were among the victims.

*Id*. ¶ 12.

Among the records referred to EOUSA are "copies of the fraudulent UCC-1 Financing Statements, attachments, addenda, . . . exhibits and . . . fraudulent notices of default and judgments that together formed the corpus of those retaliatory crimes."  *Id.* ¶ 13.  These records "contain numerous names, addresses, telephone numbers, and other personal identifying information" about third parties.  *Id.*

Initially, EOUSA relied on Exemptions 6, 7(C), and 7(E).  *See* Second SMF ¶¶ 57-62; First Smith Decl. ¶¶ 14-15.  Having concluded that all the responsive records were compiled for law enforcement purposes, the Court declined to address Exemption 6 and found EOUSA

properly relied on Exemption 7(C) to withhold third-party information.  The Court denied

summary judgment with respect to EOUSA's reliance on Exemption 7(E) to withhold "439 pages

in full . . . in conjunction with Exemption [6]," Second Smith Decl. (ECF No. 57-4) ¶ 4, and to

withhold in part seven pages under these same exemptions, *see id*. ¶ 5.  EOUSA since has

reprocessed these records, "culminat[ing] in a supplemental release of 23 pages in full and 423

pages in part."  *Id*. ¶ 2; *see id*. ¶ 13.  EOUSA's declarant "concluded that [EOUSA] cannot cite

additional facts to support exemption of the pages and parts of pages withheld pursuant to

Exemption [(7)(E)]."  *Id*. ¶ 3.

"[N]one of the pages previously withheld in full pursuant to Exemption [7(E)] remains

withheld in full."  *Id*. ¶ 2.  Instead, EOUSA falls back on Exemption 6, *see id*. ¶¶ 7-8, and now

withholds "only the names, addresses, telephone numbers, social security or taxpayer

identification numbers, and other personal identifying information," under Exemption 6, Second

Smith Decl. ¶ 8; *see* Third SMF (ECF No. 57-2) ¶¶ 4-5, from the 439 pages previously withheld

in full, *see* Third SMF ¶ 6; Second Smith Decl. ¶ 8.  Regarding the seven pages previously

withheld in part, the declarant explains that EOUSA "removed the redactions previously made

pursuant to Exemption [(7)(E)] – all of which were redactions of the stamp reading, 'Refused for

Fraud Without Dishonor - § U.C.C. 3-501' – and released those pages in part, with redactions of

only the names, addresses, telephone numbers, and other personal identifying information of

third parties."  Second Smith Decl. ¶ 9; *see* Third SMF ¶ 7.

### B. United States Marshals Service

DoD consulted USMS regarding two sets of documents.  The first set, sent on March 23,

2022, "included eleven pages of records containing USMS equities," Third SMF ¶ 14, namely, "a

set of [p]laintiff's fingerprints and . . . 'Individual Custody and Detention Report – USM 129,"

*id*.  Initially, USMS invoked Exemptions 6, 7(C) and 7(E) when redacting information from eight of these pages.  *Id*. ¶ 15.  USMS since has "determined that all of the 7(E) redactions could be lifted, and information previously withheld under Exemption 7(E) could be released to [p]laintiff."  *Id*. ¶ 16.  USMS re-processed these eight pages, released in full seven pages, and redacted "a third-party address and phone number pursuant to . . . Exemptions 6 and 7(C)" on the remaining page.  *Id*. ¶ 18; *see* Molen Decl. (ECF No. 57-6) ¶¶ 7-8.

The second consultation, dated July 12, 2022, "included thirty-six pages of records containing USMS equities."  Second SMF ¶ 90; *see* Third SMF ¶ 19.  USMS redacted information from a one-page document, identified as a Report of Investigation dated December 21, 2010, identified as "one Federal Identification (FID) number and one internal case number," Third SMF ¶ 23; Molen Decl. ¶ 11, under Exemption 7(E).  USMS reprocessed the document and provided a copy to plaintiff.  Third SMF ¶ 22.

### C. INTERPOL Washington

INTERPOL Washington's declarant explained that the agency performs, among other functions, the transmittal of "law enforcement information between National Central Bureaus of INTERPOL member countries and law enforcement agencies within the [United States] and abroad."  Second Younger Decl. (ECF No. 57-12) ¶ 7.  DoD consulted INTERPOL Washington with respect to a seven-page document, Third SMF ¶ 29, which "include[d the agency's] initial communication request to the United States Attorney's Office for the Eastern District of Virginia along with other investigative materials such as the Red Notice application related to their criminal investigation," First Younger Decl. (ECF No. 48-26) ¶ 4; *see* Second Younger Decl. ¶ 4.

INTERPOL Washington redacted information on one page under Exemption 7(E).  Third SMF ¶ 28.  The declarant explained that the protected information "describes the steps that are to be taken if the fugitive suspect of a red notice is found in an INTERPOL member country."  Second Younger Decl. ¶ 8.

## II. LEGAL STANDARD

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009).  The Court grants summary judgment if the movant shows that there is no genuine dispute as to any material fact and if the movant is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a).  In a FOIA action to compel production of agency records, the agency "is entitled to summary judgment if no material facts are in dispute and if it demonstrates 'that each document that falls within the class requested either has been produced . . . or is wholly exempt from the [FOIA's] inspection requirements.'"  *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir. 2001) (quoting *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978)).

The agency seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, . . . together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  It may meet its burden solely on the basis of affidavits or declarations, *see Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999), as long as they "describe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not

controverted by either contrary evidence in the record [or] by evidence of agency bad faith,"
*Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981) (footnote omitted).

In addition, where an agency relies on Exemptions 6 and 7, among others, it "must show both that the record falls within a FOIA exemption, 5 U.S.C. § 552(b), and that the agency reasonably foresees that disclosure would harm an interest protected by the exemption, *id.* § 552(a)(8)(A)(i)(I)." *Machado Amadis v. U.S. Dep't of State*, 971 F.3d 364, 370 (D.C. Cir. 2020) (internal quotation marks and brackets omitted). "The D.C. Circuit requires agencies to articulate the harm from disclosure in a '"focused and concrete way."' *Louise Trauma Ctr. LLC v. U.S. Dep't of Homeland Sec.*, No. 1:20-cv-01128 (TNM), 2022 WL 1081097, at *4 (D.D.C. Apr. 11, 2022) (quoting *Reporters Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 369 (D.C. Cir. 2021)). "But even without a sufficient explanation from the agency, the 'context and purpose' of withheld information can support a finding of foreseeable harm." *Kendrick v. Fed. Bureau of Investigation*, No. 1:20-cv-2900 (TNM), 2022 WL 4534627, at *4 (D.D.C. Sept. 28, 2022) (quoting *Reporters Comm.*, 3 F.4th at 372), *aff'd*, No. 22-5271, 2023 WL 8101123 (D.C. Cir. Nov. 21, 2023).

In response to summary judgment, the non-moving party must point to specific facts in the record that reveal a genuine issue that is suitable for trial. *See* FED. R. CIV. P. 56(c)(1); *Celotex*, 477 U.S. at 324. In doing so, the nonmovant may not rely on "statements that are impermissible hearsay or that are not based on personal knowledge." *Shuler v. District of Columbia*, 744 F. Supp. 2d 320, 327 (D.D.C. 2010) (citation and quotations omitted). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion[.]" FED. R. CIV. P. 56(e)(2).

## III. DISCUSSION

### A. Exemptions 6 and 7

#### 1. Exemption 6

Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The Court's first task is to determine whether the responsive records are personal, medical or similar files. *Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1228 (D.C. Cir. 2008). Protection under Exemption 6 is not limited to "a narrow case of files," and instead "cover[s] detailed Government records on an individual which can be identified as applying to that individual." *U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 595, 602 (1982); *see Telematch, Inc. v. U.S. Dep't of Agric.*, 45 F.4th 343, 351 (D.C. Cir. 2022) ("Like names, customer numbers correspond to particular farm owners and can be used to ascertain their identities. They are therefore similar files."). In other words, Exemption 6 is designed "to protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information" maintained in government records, *Washington Post*, 456 U.S. at 599, regardless of "the label of the file which contains the damaging information," *id.* at 601.

Next, the Court determines whether disclosure of the third-party information "would constitute a clearly unwarranted invasion of personal privacy." *Id.* (quoting 5 U.S.C. § 552(b)(6)). "This second inquiry requires [the Court] to balance the privacy interest that would be compromised by disclosure against any public interest in the requested information." *Id.* (citations omitted). The only relevant public interest in this context harkens back to the principal

purpose of the FOIA: to "shed[] light on an agency's performance of its statutory duties[.]"  *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 762 (1989).

EOUSA initially relied on Exemption 7(E) in conjunction with Exemption 6 to withhold information about third parties.  *See* Second Smith Decl. ¶¶ 4, 6, 8.  In light of the Court's January 12, 2024, ruling, EOUSA reconsidered its withholdings, *see id*. ¶ 8, and determined it "could safeguard the privacy interests sought to be protected by Exemption [6] with fewer withholdings in full, redacting only names, addresses, telephone numbers, social security or taxpayer identification numbers, and other personal identifying information" on those pages, *id*. Consequently, EOUSA released in full 23 pages of records, and released in part 416 pages of records.  *See id*.; Third SMF ¶ 6.

Names, addresses, telephone numbers, social security and tax identification numbers, and other personal identifying information can be identified as applying to particular individuals, and the Court concurs with EOUSA's assessment, *see generally* Second Smith Decl., Ex. C (ECF No. 48-21, Vaughn Index - EOUSA), that no public interest outweighs these individuals' privacy interests.  EOUSA reasonably foresees that disclosure would harm the interest Exemption 6 is designed to protect, noting that Day already has "invaded the privacy of those third parties by creating those pages – which comprised fraudulent UCC-1 financing statements, addenda, notices of default, default judgments, notices, letters, and related papers – and by filing them publicly so as to make it appear [as if] those third parties had defaulted on debts[.]"  Second Smith Decl. ¶ 12.  The Court concludes that EOUSA's reliance on Exemption 6 is proper.

### 2. Exemption 7(C)

EOUSA initially withheld in part "seven pages of correspondence sent to Day by lawyers representing victims of his retaliatory fraud [scheme], returned by Day to those lawyers bearing a

pseudo-legal stamp refusing to accept those letters." First Smith Decl. ¶ 20(b). It redacted "the stamp so as to preclude Day's future use of images of the stamp or its language to perpetrate any further fraud." *Id.* Having abandoned its reliance on Exemption 7(E), EOUSA has invoked Exemption 6 in conjunction with Exemption 7(C) to withhold "the names, addresses, telephone numbers, and other personally identifying information of third parties[.]" Second Smith Decl. ¶ 9; *see* Third SMF ¶ 7.

Although EOUSA did not rely on Exemption 7(C) at the administrative level, it is not a "bait and switch," Pl.'s Response to Third SMF (ECF No. 59-1) ¶ 8, for EOUSA to invoke Exemption 7(C) in district court, *see Sinito v. U.S. Dep't of Justice*, No. 87-cv-0814 (TFH), 2000 WL 36691372, at *16 (D.D.C. July 12, 2000) ("The FOIA clearly directs district courts to review agency actions *de novo. See* 5 U.S.C. 552(a)(4)(B). Therefore, an agency is not barred from invoking a particular exemption in litigation merely because that exemption was not cited in responding to the request at the administrative level."), *aff'd in part sub nom. Sinito v. Dep't of Justice*, 22 F. App'x 1 (D.C. Cir. 2001).

All the records responsive to plaintiff's FOIA request are maintained by DCIS, "the criminal investigative arm of the DoD OIG," First Dorgan Decl. ¶ 6.a., and were "created . . . during its law enforcement investigation into [p]laintiff's actions," *id.* ¶ 50. Where, as here, an agency relies on Exemptions 6 and 7(C) to protect the same information, the Court "focus[es] . . . on Exemption 7(C) because it provides broader privacy protection than Exemption 6 and thus 'establishes a lower bar for withholding material.'" *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*, 746 F.3d 1082, 1091 n.2 (D.C. Cir. 2014) (quoting *ACLU v. DOJ*, 655 F.3d 1, 6 (D.C. Cir. 2011)) (additional citation omitted); *see Roth v. Dep't of Justice*, 642 F.3d 1161, 1173 (D.C. Cir. 2011). The D.C. Circuit has held "categorically that, unless

access to the names and addresses of private individuals appearing in files within the ambit of
Exemption 7(C) is necessary in order to confirm or refute compelling evidence that the agency is
engaged in illegal activity, such information is exempt from disclosure."  *SafeCard Servs., Inc. v.
SEC*, 926 F.2d 1197, 1206 (D.C. Cir. 1991); *see Schrecker v. U.S. Dep't of Justice*, 349 F.3d 657,
666 (D.C. Cir. 2003) ("Assuming that the 'private' individuals mentioned in the records are
living, their names and identifying information are presumptively exempt from disclosure under
the *SafeCard* rule.").

Plaintiff responds that the names of certain federal government officials, including two
Assistant United States Attorneys and two DCIS agents, are in the public domain, having been
"published on the internet by their own employing agencies and by their own hand on Facebook
or Linked In."  Pl.'s Opp'n (ECF No. 59) at 2-3.

"Under [the] public-domain doctrine, materials normally immunized from disclosure
under FOIA lose their protective cloak once disclosed and preserved in a permanent public
record," *Cottone v. Reno*, 193 F.3d 550, 554 (D.C. Cir. 1999), and an agency "may not rely on an
otherwise valid exemption to justify withholding information that is already in the public
domain," *Canning v. U.S. Dep't of Justice*, 567 F. Supp. 2d 104, 112 (D.D.C. 2008) (citing
*Students Against Genocide v. Dep't of State*, 257 F. 3d 828, 836 (D.C. Cir. 2001)); *see Niagara
Mohawk Power Corp. v. U.S. Dep't of Energy*, 169 F.3d 16, 19 (D.C. Cir. 1999) ("[T]he logic of
FOIA [mandates that,] if identical information is truly public, then enforcement of an exemption
cannot fulfill its purpose.").  Plaintiff bears the initial burden "of pointing to specific information
in the public domain that appears to duplicate that being withheld," *Afshar v. Dep't of State,* 702
F.2d 1125, 1129 (D.C. Cir. 1983), and he fails to do so.

"Prior disclosure of similar information does not suffice" to overcome a claimed FOIA exemption; "instead, the specific information sought by the plaintiff must already be in the public domain." *Wolfe v. CIA*, 473 F.3d 370, 378 (D.C. Cir. 2007) (citation omitted).  Plaintiff does not identify any information withheld by EOUSA under a FOIA exemption which duplicates information the government has made public previously.  It is not enough to assert that the names of or identifying information about four government officials may have appeared on the internet. *See Bartko v. U.S. Dep't of Justice*, 167 F. Supp. 3d 55, 72 (D.D.C. 2016) (rejecting public domain argument where requester had not "identified the precise documents released by [agency] that are substantially identical to other documents the agency is withholding").

EOUSA reasonably foresees that disclosure of this third-party information would harm the interest Exemption 7(C) is designed to protect, given plaintiff's past conduct, that is, "by creating those pages – which comprised fraudulent UCC-1 financing statements, addenda, notices of default, default judgments, notices, letters, and related papers – and by filing them publicly so as to make it appear that those third parties had defaulted on debts ranging from hundreds of thousands to billions of dollars."  Second Smith Decl. ¶ 12.  The Court concludes that reliance on Exemption 7(C) is proper.

### 3. Exemption 7(E)

Exemption 7(E) allows agencies to withhold "records or information compiled for law enforcement purposes" if its release "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).  The D.C. Circuit considers this a "relatively low bar for the agency to justify withholding," and "an agency must demonstrate only

that release of a document might increase the risk that a law will be violated or that past violators will escape legal consequences." *Pub. Emps. for Envt'l Resp. v. U.S. Sec., Int'l Boundary and Water Comm'n, U.S.-Mexico*, 740 F.3d 195, 205 (D.C. Cir. 2014) (cleaned up).

### a. United States Marshals Service

USMS redacted from a one-page Report of Investigation "internal law enforcement sensitive identifying numbers, more specifically one Federal Identification (FID) number and one internal case number." Molen Decl. ¶ 12. Its declarant explained:

> These data points themselves are indicative of the manner in which the USMS internally identifies, indexes, and communicates information pertaining to fugitives and inmates. If disclosed, these internal identifiers could be used by persons seeking improper access to navigate law enforcement databases and gain access to law enforcement sensitive data. Disclosure may further compromise the integrity of information contained in internal databases by risking potential deletion or alteration of agency records. This risk is especially present given recent data breaches affecting federal government agencies.

*Id.*

Plaintiff denies that disclosure of these numbers would allow individuals to circumvent the law because "[i]t has been 19 years," Pl.'s Response to Third SMF ¶ 25, "since the underlying investigation," Pl.'s Opp'n at 2. But plaintiff offers no explanation why the passage of time would not pose a risk, or why disclosure of the FID and internal case numbers would not reasonably be expected to risk circumvention of the law by potentially leading individuals to law enforcement databases and sensitive law enforcement data maintained there.

USMS adequately demonstrates that Exemption (E) applies, and reasonably foresees that disclosure of the FID and internal case number risks circumvention of the law. The Court concludes that USMS properly redacts this information under Exemption (E).

**b. INTERPOL Washington**

Among the records forwarded by DoD for consultation were INTERPOL Washington's

"initial communication request to the . . . United States Attorney's Office for the Eastern District

of Virginia" and "the Red Notice application related their criminal investigation."  First Younger

Decl. ¶ 4; *see* Vaughn Index (ECF No. 48-6) at 82 (Bates 2473-79, identifying document as Red

Notice Application "regarding provisional arrest authority pertaining to Plaintiff").  INTERPOL's

declarant explained:

> Here, the information redacted by [INTERPOL Washington]
> describes the steps that are to be taken if the fugitive suspect of a
> red notice is found in an INTERPOL member country.  The
> redacted language outlines a procedure that is not well known to
> the public.  Although it is widely understood that INTERPOL red
> notices can be used, in some circumstances, to bring fugitives into
> custody, the public is largely unaware of the steps required for this
> to occur, and, if it does, what happens next.  This lack of public
> understanding plays an important role in the continued utility of
> INTERPOL red notices as a means of arresting alleged criminals
> and returning them to the country that requested the red notice so
> that they can stand trial or serve a sentence.

Second Younger Decl. ¶ 8.  Further, the declarant asserted that release of the redacted

information "poses substantial risks to INTERPOL's ability to carry out its mission effectively,

could potentially decrease INTERPOL's effectiveness, and could enable criminals to circumvent

the law."  *Id*. ¶ 9.

Plaintiff does not dispute that INTERPOL Washington properly redacted portions of a

seven-page document under Exemption 7(E).  *See* Pl.'s Response to Third SMF ¶ 28.  Rather, he

claims that "INTERPOL Washington is withholding over . . . 1000 responsive records" without

justification.  *Id*.  There are no records relevant to *this* case other than the seven pages referred to

INTERPOL Washington by DoD, *see* Third SMF ¶ 28, and INTERPOL Washington's alleged

failure to produce other records is not before the Court.

14

The Court concludes that INTERPOL Washington properly withheld under Exemption 7(E) information in the relevant Red Notice Application, the release of which would undermine the efficacy of red notices as a means of arresting and returning alleged criminals to the country requesting their apprehension.

**B. Segregability**

"[N]on-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Wilderness Soc'y v. U.S. Dep't of Interior*, 344 F. Supp. 2d 1, 18 (D.D.C. 2004) (quoting *Mead Data Cent., Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977)); 5 U.S.C. § 552(b). Plaintiff generally denies that EOUSA, USMS and INTERPOL Washington released all reasonably segregable information, *see* Pl.'s Response to Third SMF ¶¶ 13, 27, 33, with no support, and thus fails to counter the showing by EOUSA, USMS and INTERPOL Washington that each complied with the FOIA. By failing to respond to DoD's Second SMF, plaintiff concedes that DoD, FBI, Department of the Army, Defense Contract Management Agency, Defense Finance and Accounting Service, Defense Logistics Agency, and United States Postal Inspection Service released all reasonably segregable information. *See* Second SMF ¶¶ 49, 89, 107, 109, 113, 115, 118-19; First Dorgan Decl. ¶ 59.

The Court has reviewed the agencies' supporting declarations and Vaughn indices, and concludes that each agency released to plaintiff all reasonably segregable information.

**IV. CONCLUSION**

The Court concludes that EOUSA, USMS and INTERPOL Washington properly withheld information under Exemptions 6, 7(C) and 7(E), and that all agencies released reasonably segregable information to plaintiff.  Accordingly, the Court GRANTS Defendant's Second Renewed Motion for Summary Judgment (ECF No. 57).  An Order is issued separately.


DATE: January 31, 2025                    EMMET G. SULLIVAN
                                          United States District Judge